UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-216-CRS-CHL

LIVE NATION WORLDWIDE, INC.,　　　　　　　　　　　　　　　　　Plaintiff,

v.

SECURA INSURANCE, et al.,　　　　　　　　　　　　　　　　　Defendants.

## MEMORANDUM OPINION AND ORDER

This action involves plaintiff Live Nation Worldwide, Inc. ("Live Nation") and defendants Secura Insurance ("Secura), City Securities Insurance, LLC ("City Securities"), and ESG Security, Inc. ("ESG"). Before the Court are two motions: (1) Motion to Bifurcate and Stay Discovery on Bad Faith Claim (DN 22) filed by Secura; and (2) Motion to Bifurcate, Stay, and for Protective Order filed by ESG (DN 42).[1] The Court will address both motions together.

### I.　　BACKGROUND

This is an action concerning the rights of Live Nation under an insurance policy procured by City Securities for ESG and issued by Secura. It arises out of a July 16, 2013 concert at the Louisville Palace in Louisville, Kentucky. At the time of the concert, Live Nation operated the Louisville Palace and had contracted ESG to provide security services. According to Live Nation, pursuant to the terms of a vendor services agreement, ESG agreed to, among other things, name Live Nation as an additional insured on its insurance policy. (DN 1 at 2-3 [Complaint].) Live Nation alleges that ESG placed its insurance for the applicable policy period through City Securities, and City Securities placed the coverage with Secura. (*Id*. at 3.)

---

[1] ESG's "motion" is contained in its response (DN 42) to Live Nation's Motion to Compel (DN 31), which is not before the Court.

On or about December 9, 2013, two concert-goers filed suit in Jefferson Circuit Court against Live Nation and ESG for injuries they allegedly sustained while at the July 16 concert. (*Id*.) According to Live Nation, it notified Secura and requested defense and coverage for the claims brought against it in Jefferson Circuit Court. Live Nation alleges that Secura declined to provide Live Nation an unqualified defense and indemnity in the Jefferson Circuit Court action. (*Id*. at 3-4.) Live Nation avers that Secura asserts that the policy provided was excess to Live Nation's own coverage. (*Id*.) Live Nation alternately claims that, if Secura is correct in its assertion, ESG breached the vendor services agreement by failing to obtain an insurance policy that included Live Nation as an additional insured. (*Id*. at 4.) Live Nation also asserts that, to the extent City Securities failed to place the proper coverage on Live Nation's behalf, it also has liability for negligence, and Secura is responsible for the negligence of its agent, City Securities. (*Id*.)

Live Nation has asserted the following claims: (1) Count I – Declaratory Judgment, declaring that Secura owes Live Nation a full defense and indemnity; (2) Count II – Bad Faith against Secura; (3) Count III – Breach of Contract against ESG; (4) Count IV – Negligence against Secura and City Securities. (*Id*. at 4-6.) According to a status report (DN 51) filed on December 1, 2017, the Jefferson Circuit Court action has been settled, and Live Nation and ESG have agreed to litigate their claims against one another in this lawsuit.

The Court notes that two dispositive motions (DNs 52, 53) were filed on December 8, 2017 by ESG and Secura, respectively. At this juncture, the undersigned sees no reason to alter its previous order (DN 48) denying the request for a stay of all discovery pending a ruling on the dispositive motions.

## II. DISCUSSION

### A. Motion to Bifurcate and Stay Discovery and Bad Faith Claims ("Motion to Bifurcate") (DN 22) by Secura

#### 1. Parties' arguments

In the Motion to Bifurcate, Secura requests that the Court bifurcate Live Nation's bad-faith claim against it and stay discovery on that claim until final disposition of the underlying coverage claim. Secura argues, among other things, that doing so would promote judicial efficiency and convenience. Secura further argues that resolution of Live Nation's coverage claim against Secura may also be dispositive of Live Nation's claims against ESG and City Securities. Secura asserts that, if the Court concludes that the vendor services agreement did not contractually require ESG to provide liability coverage to Live Nation that would be primary to Live Nation's own coverage, then Secura does not have an obligation under its policy to cover Live Nation on a primary basis and the breach of contract claim against ESG will fail. Secura asserts that, similarly, if ESG was not obligated under the terms of the vendor services agreement to purchase liability insurance that covered Live Nation on a primary basis, Live Nation's negligence claim against City Securities will also fail. These factors, Secura asserts, weigh in favor of the Court granting its motion.

Live Nation argues, among other things, that bifurcation is inappropriate because the facts supporting Live Nation's coverage, breach of contract, negligence, and bad-faith claims are inextricably intertwined. Live Nation argues that to properly prosecute these claims, discovery is required on defendants' communications regarding the coverage required under the vendor services agreement; defendants' positions once Live Nation tendered its defense and requested indemnity; and communications between and among the defendants related to the transactions

underlying the placement of the policy and decision to deny coverage. Live Nations asserts that all of this evidence will be appropriate for trial of the claims, including the bad-faith claim.

Live Nation avers that Secura does not dispute that it owes Live Nation coverage, only the extent of that coverage. Live Nation therefore argues that even if the vendor services agreement did not clearly require Live Nation to be covered as an additional insured on a primary basis, then the vendor services agreement is ambiguous on that issue. According to Live Nation, this ambiguity raises the question of whether Live Nation and ESG reasonably expected that Secura would cover Live Nation as an additional insured on a primary basis. As part of this question, Live Nation asserts that Secura will have to explain why ESG and Live Nation would have entered into a vendor services agreement for security at an event venue to have primary coverage only extended to Live Nation for automobile liability. Live Nation further asserts that delving into the question of the reasonable expectations of the parties will raise issues concerning the communications among the parties to determine, among other things, whether Secura issued an insurance policy inconsistent with the wishes of ESG and what positions defendants took after Live Nation tendered its defense and sought indemnification and coverage. Live Nation also argues that judicial economy will not be served by bifurcation.

In reply, Secura argues, among other things, that Live Nation's coverage claim should be decided on a reading of the vendor services agreement, the relevant insurance policies, and the complaint in the Jefferson Circuit Court action. Secura also argues that, until the Court determines that any contract at issue is ambiguous, none of the discovery Live Nation seeks will be admissible as to the issue of coverage.

## 2. Analysis

An initial matter, the Court notes that the Court is not *required* to bifurcate the bad faith claim as Secura suggests. Rather, a court *may* bifurcate "one or more separate issues, claims, cross-claims, counter claims, or third party claims" in order to "avoid prejudice or to expedite and economize." Fed. R. Civ. P. 42(b). The decision to bifurcate lies within the sound discretion of the trial court. *Smith v. Allstate Ins. Co*., 403 F.3d 401, 407 (6th Cir. 2005).

Courts frequently bifurcate claims addressing coverage and bad faith against insurance companies, as deciding the first claim may obviate the need to litigate the second. *See, e.g*., *Graves v. Standard Ins. Co.*, No. 3:14-CV-558-DJH, 2015 WL 2453156, at *3 (W.D. Ky. May 22, 2015); *Galloway v. Nationwide Mut. Fire Ins. Co.*, No. 3:09-CV-491-JDM, 2010 WL 3927815, at *1 (W.D. Ky. Oct. 5, 2010) ("In third-party and first-party cases alike, coverage issues commonly hinge on an issue of contract interpretation and are frequently, although not always, adjudicated on summary judgment motions. Limited discovery and adjudication of the threshold coverage dispute would, in the court's view, streamline adjudication—a conclusion reached without any view of the merits of the underlying coverage claim."). This is true even in first-party bad-faith claims. *See, e.g*., *Brantley v. Safeco Ins. Co. of Am.*, No. 1:11-CV-00054-R, 2011 WL 6012554, at *2 (W.D. Ky. Dec. 1, 2011) ("A brief review of the prevailing precedent indicates first-party bad faith claims are routinely separated from coverage issues.") (collecting cases). The question of bifurcation in these particular cases centers on whether resolution of a single claim would be dispositive of the entire case. *Id*.

Here, a declaration by the Court that Secura did not owe Live Nation a full defense and indemnification would likely foreclose the bad-faith claim against it. Even a declaration that

Secura owed Live Nation something in between full defense and indemnification and no coverage at all may foreclose the bad faith claim against it. Furthermore, a declaration of the rights of Live Nation under Secura's policy may also shape the contours of the other claims asserted by Live Nation. Consequently, the undersigned finds that a bifurcation of the bad faith claim against Secura and stay of discovery with respect to same serves the interests of judicial economy in this matter.

Live Nation cites to *Tharpe v. Illinois Nat. Ins. Co.*, 199 F.R.D. 213, 214 (W.D. Ky. 2001), in support of its position that the bad faith claim should not be bifurcated. In *Tharpe*, a motorist brought an action against an insurance company for failure to pay basic reparations benefits – a chiropractic bill – in full. The insurance company took the position that the chiropractic bill was not reasonable. The insurance company moved for bifurcation of the contractual claim (the basic reparations benefits claim) from the extra-contractual claims (violations of unfair claims settlement practices and consumer protection acts) for purposes of discovery and trial. The district court noted that this was a first-party action case in which there was only one plaintiff and one defendant, and that all of the claims in the action related to the handling of the chiropractor's bill. The district court further noted that, under the Motor Vehicle Reparations Act, the insurance company was required to present some proof to controvert the rebuttable presumption that the chiropractor's bill was reasonable in amount and reasonably necessary. With respect to the claim for violation of the Unfair Claims Settlement Practices Act, the motorist was required to show, among other things, that the insurer lacked a reasonable basis in law or fact for denying the claim. In other words, the insurance company's defense of the claims would hinge on the same evidence – proof that the motorist's medical expenses were not

reasonable and necessary. Thus, the district court concluded that the issues were inextricably intertwined and that the usual considerations which militated in favor of bifurcation were absent.

*Tharpe* does not help Live Nation in this instance. This is not a situation where a ruling on the coverage issue is inextricably tied to whether Secura denied Live Nation a full defense and indemnification in bad faith. The coverage issue will likely be decided on the basis of the nature of the covered event and language of the policy, a separate issue from Secura's conduct in denying the claim. The undersigned declines to go down the rabbit hole of "what ifs" with respect to what will happen to the other claims against the other defendants in this lawsuit should the Court rule a certain way with respect to the declaratory judgment count. For these purposes however, the undersigned notes that *Tharpe* is distinguishable in this respect as well.

**B.** **Motion to Bifurcate, Stay, and for Protective Order (DN 42) filed by ESG**

The Court has already addressed and denied in a separate order (DN 48) ESG's request for a protective order contained in the Motion to Bifurcate, Stay, and for Protective Order. However, ESG also requests in the Motion to Bifurcate, Stay, and for Protective Order that the undersigned bifurcate and stay discovery on the bad-faith claim against Secura. ESG claims that permitting discovery on Live Nation's bad faith claim would unduly prejudice its defense of the underlying Jefferson Circuit Court lawsuit. ESG further asserts that the issues could potentially be confused if the bad-faith claim against Secura were adjudicated at the same time as the breach of contract claim against ESG.

Because the Court has already determined that the bad-faith claim against Secura should be bifurcated, it will deny this aspect of ESG's Motion to Bifurcate, Stay, and for Protective

7

Order as moot. To the extent that ESG is also requesting a stay of *all* discovery pending a ruling on dispositive motions filed, or to be filed, by defendants, that request is denied.

### III.     CONCLUSION

Accordingly,

IT IS ORDERED that the Motion to Bifurcate (DN 22) is GRANTED. The bad faith claim asserted by Live Nation against Secura is bifurcated from the other claims in this matter for both discovery and trial purposes.

IT IS FURTHER ORDERED that the Motion to Bifurcate, Stay, and for Protective Order (DN 42) is DENIED AS MOOT.

IT IS FURTHER ORDERED that the parties JOINTLY FILE a proposed discovery plan within **fourteen (14) days** of entry of this Order.


cc: Counsel of record