UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

LIVE NATION WORLDWIDE, INC.,   Plaintiff,

v.   Civil Action No. 3:17-cv-00216-RGJ-CHL

SECURA INSURANCE; CITY SECURITIES INSURANCE, LLC; and ESG SECURITY   Defendants

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on four Motions for Summary Judgment. [DE 52, 53, 59, 61]. Responses, [DE 60, 62, 67, 69], and replies were filed, [DE 64, 68, 72]. Briefing is complete, and these matters are ripe for adjudication. For the reasons below, Live Nation Worldwide Inc.'s ("Live Nation") Motion for Summary Judgment on Coverage Claim Against Secura Insurance ("Secura") [DE 59] is **GRANTED,** Live Nation's Motion for Summary Judgment on Breach of Contract Claim Against ESG Security ("ESG") [DE 61] is **DENIED**, Secura's Motion for Summary Judgment [DE 52] is **DENIED**, and ESG's Motion for Summary Judgment [DE 53] is **GRANTED**.

### BACKGROUND

Live Nation operates the Louisville Palace, which among other things, is a concert venue. [DE 92, Am. Compl. at 1426, ¶1]. Live Nation contracted with ESG to provide crowd control services for the Louisville Palace. [*Id.* at 1427, ¶6]. Live Nation and ESG entered into a Vendor Services Agreement ("VSA") detailing the requirements of the relationship. [*Id.* at ¶ 7]. ESG's responsibilities included "direction and control of the audience to deter any crowd disturbances" for events being held at the Louisville Palace. [*Id.*].

1

The VSA requires ESG to obtain and maintain certain insurance coverage, including commercial general liability insurance of at least one million dollars per occurrence as explained in Section 3(A) of the VSA. [*Id.* at 1427, ¶ 7, DE 60-1 at §3(A)(ii)]. The VSA requires ESG to defend, indemnify, and hold harmless Live Nation "from and against any and all claims or loss arising out of any violation of any law, rule, regulation or order, and from any and all claims or liabilities, including reasonable attorney's fees, for loss, damage or injury to persons or property of whatever kind or nature arising from the acts or omissions of Vendor" as explained in Section 4(A) of the VSA. [DE 92 at 1428, ¶ 8]. ESG placed its insurance for the applicable period through City Securities Insurance, LLC ("City Securities"). [*Id.* at 1428, ¶ 9]. City Securities placed coverage with Secura. [*Id.* at 1428, ¶ 10]. Live Nation purchased another general liability policy with Starr Insurance, which contained a retained limit of one million dollars. [DE 60 at 842].

Both Live Nation and ESG were sued in the Jefferson County, Kentucky in an action styled *James Mark Hays, et al., v. Live Nation Worldwide, Inc., et al.*, Jefferson County Circuit Court, Action No. 13CI06424 ("*Hays* Complaint"). [DE 92 at 1429, ¶ 14; DE 58-3, *Hays* Complaint at 808]. The *Hays* Complaint alleged injuries resulting from a fight between several patrons during a Steve Miller Band concert at the Louisville Palace. [DE 58-3]. ESG was performing crowd management services for the concert. [DE 58-3 at 809, ¶ 4]. Live Nation and the plaintiffs in the *Hays* Action reached a confidential settlement before trial. [DE 92 at 1429, ¶ 17].

Secura refused to pay for Live Nation's defense costs and indemnify Live Nation for the settlement in *Hays*. [*Id.* at 1429, ¶ 16]. Live Nation filed the present complaint (the "Complaint") against Secura Insurance, City Securities, and ESG Security, Inc., [DE 1] which they later amended (the "FAC") [DE 92]. The FAC alleges breach of contract, bad faith, and Unfair Claims Settlement Practices Act claims against Secura. [DE 92 at 1431–33]. The FAC alleges breach of contract

and indemnification claims against ESG. [*Id.* at 1433–34]. The FAC also alleges negligence against City Securities as *respondeat superior*. [*Id.* at 1435]. City Securities, ESG, and Secura answered. [DE 93, 94, 95]. In its answer, Secura made a counterclaim for a declaratory judgment under 28 USC §2201 and FRCP 57, to determine an actual controversy between Secura and Live Nation. [DE 95 at 1471]. Live Nation answered the counterclaim. [DE 98].

Live Nation, Secura, and ESG each filed motions for summary judgment on the various claims.[1] [DE 52, 53, 59, 61]. Responses and replies were filed. [DE 60, 62, 64, 67, 68, 69, 72]. The Court heard oral argument on the motions. [DE 101].

## **LEGAL STANDARD**

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855, 1997 WL 640116, at *4 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See*

---

[1] The motions for summary judgment were filed before the FAC. But the parties agreed that "that the amended complaint will not impact the pending motions for summary judgment." [DE 91 at 1423].

*Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 131–32 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## **DISCUSSION**

Here, all parties agree that this Court can decide the issues as a matter of law on a motion for summary judgment. [DE 52-1 at 348; 53-1 at 737; 60 at 828–29]. Other courts, deciding similar issues, have done so on summary judgment. *Crutchfield v. Transamerica Occidental Life Ins. Co.*, 527 F. App'x 339, 342 (6th Cir. 2013).

The motions present three issues. First, whether the VSA required ESG to purchase a policy on behalf of Live Nation on a primary basis, and based on that determination, whether Secura's obligation to Live Nation is satisfied on a *pro rata* basis with Live Nation's Starr Insurance Policy. Second, whether ESG's duty to indemnify and defend under the VSA was

4

limited to instances of vicarious liability. Third, whether the policy that ESG purchased from Secura met ESG's requirements under the VSA. As discussed below, the Court ultimately need not decide the last question. Secura concedes that if the Court determines the VSA required ESG to purchase a primary basis policy and ESG's liability was not limited to instances of vicarious liability, then Secura would "owe that obligation to its insured." [DE 102, August 8, 2019 Transcript of Motion Hearing ("Tr.") at 1883:4–84:15; 1923:8–16]. Thus, the Court only needs to decide what the VSA required ESG to purchase.

### A. The VSA is an unambiguous contract.

To begin, before the Court can determine what the VSA requires, it must first determine whether the VSA is ambiguous such that the Court may look beyond the four corners of the document to determine its meaning. "[A]n ambiguous contract is one capable of more than one different, reasonable interpretation." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106, n.12 (Ky. 2003) (quoting *Central Bank & Trust Co. v. Kincaid, Ky.*, 617 S.W.2d 32, 33 (1981)). Here, while disagreeing with the meaning of some essential terms of the VSA, both parties agree that the VSA is an unambiguous contract.[2] As discussed below, the VSA is unambiguous and there is only one reasonable interpretation of its terms.[3] Next the Court, sitting in diversity, must apply state law in

---

[2] That the parties argue for different interpretations of the VSA does not, itself, cause a contract to become ambiguous. *Frear*, 103 S.W.3d at 107 ("an otherwise unambiguous contract does not become ambiguous when a party asserts—especially post hoc, and after detrimental reliance by another party—that the terms of the agreement fail to state what it intended").

[3] The parties provided supplemental briefing and evidence on the meaning of the VSA. [DE 87, 96, 97]. Because the VSA is unambiguous the Court need not consider the parol evidence submitted in the parties' supplemental briefing. *Luttrell v. Cooper Indus., Inc.*, 60 F. Supp. 2d 629, 631 (E.D. Ky. 1998) ("Barring an ambiguity, [parole] evidence cannot be admitted. 'If the language is unambiguous, the meaning of the language is a question of law, and the intent of the parties must be discerned from the words used in the instrument.'") (quoting *Taggart v. United States,* 880 F.2d 867, 870 (6th Cir. 1989)).

5

interpreting the contract. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Here, according to the VSA's terms, Kentucky law applies. [DE 60-1 at 853, §12].

**B. Secura is obligated to Live Nation on a Primary basis.**

**1. The VSA requires ESG to insure Live Nation on a Primary basis**

The VSA requires ESG, the "Vendor," to maintain four types of insurance. Section 3(A) lists each type of insurance followed by a short description of the necessary coverage. Section 3(A) requires:

> **3. INSURANCE:**
>
> A. Vendor shall maintain the following insurance coverage throughout the Term of this Agreement at Vendor's sole expense:
>
> (i) Statutory Workers' Compensation including Employer's Liability Insurance, subject to limits of not less than Five Hundred Thousand Dollars ($500,000.00), affording coverage under the Workers Compensation laws of the State or Commonwealth in which the Services are performed;
>
> (ii) Commercial General Liability Insurance for limits of not less than One Million Dollars ($1,000,000.00) per occurrence Bodily Injury and Property Damage combined; One Million Dollars ($1,000,000.00) per occurrence Personal and Advertising Injury; Two Million Dollars ($2,000,000.00) aggregate Products and Completed Operations Liability; Fifty Thousand Dollars ($50,000.00) Fire Legal Liability and Two Million Dollars ($2,000,000.00) general aggregate limit per policy. The policy shall be written on an occurrence basis. The policy shall cover assault and battery; the policy does not expressly exclude abuse and molestation; (iii) Umbrella Liability Insurance at not less than Nine Million Dollars ($9,000,000.00) limit providing excess coverage over all limits and coverages noted in 3A (ii) above. This policy shall be written on an occurrence basis;
>
> (iv) Comprehensive Automobile Liability Insurance containing a One Million Dollars ($1,000,000.00) combined single limit covering all owned, non-owned and hired vehicles. Policy shall be

> endorsed to name additional insureds as respects the operations of the named insured, its agents, contractors and employees; and
>
> (v) Coverage for the additional insured shall apply on a primary basis irrespective of any other insurance, whether collectible or not.

Section 3(B) immediately follows Section 3(A):

> The policies in 3(A) shall be endorsed to name Live Nation Worldwide, Inc. and each of its parents, partners, affiliates, subsidiaries, landlords, successors, and assigns (collectively, the "LN Parties") as Additional Insureds as respects the operations of the named insured, its agents, employees, representatives and contractors. Further, coverage naming the Additional Insureds shall be on a contractual liability basis irrespective of any other insurance, whether collectible or not, only to the extent of Vendor's liability as described in this Agreement. Upon execution of this Agreement . . .

Live Nation argues that the language of the VSA requires ESG to hold insurance where Live Nation is the primary insured. [DE 60 at 839–40; DE 62 at 873–76]. In support of its argument, Live Nation cites Section 3(A)(v), which provides that "Coverage for the additional insured shall apply on a primary basis irrespective of any other insurance, whether collectible or not." [DE 60 at 839]. Live Nation argues that Section 3(A)(ii) requires ESG to maintain a $1,000,000 per occurrence commercial general liability insurance policy, and Section 3(A)(v) requires that insurance to be primary. [*Id.* at 839–40].

In contrast, both Secura and ESG argue that the VSA only contemplates the automobile insurance to cover Live Nation on a primary basis. ESG and Secura argue that while subsection (v) of Section 3(A) follows in line with the other subsections of Section 3(A), it is intended only to modify subsection (iv) of Section 3(A). [DE 52-1 at 364; 53-1 at 738–39]. Thus, only the automobile insurance, the type of insurance described in subsection (iv) of Section 3(A), needs to insure Live Nation on a primary basis. [*Id.*].

The issue here is simple: does subsection (v) of Section 3(A) modify the preceding list, (i)–(iv), or does it modify only (iv). "The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). "[C]ontracts, which include insurance policies, should include consideration of normal grammar rules." *Hippler v. Allied Property and Cas. Ins. Co.*, No. 2:12–cv–1039–PMW, 2013 WL 5448245, at *4 (D. Utah Sept. 30, 2013) (applying grammar principle that "items in a series separated by commas and joined at the end by a conjunction constitute a single list or series" to interpretation of insurance contract); *see also Leonor v. Provident Life & Accident Co.,* 790 F.3d 682, 687 (6th Cir. 2015) (in interpreting insurance contract court found that "grammar is a useful guide in any determination of a text's meaning"). ESG's interpretation of Section 3(A) defies of the standards of contract interpretation. "[I]tems separated by semicolons are items in a list, each of which is linked to the original phrase." *Monticello Ins. Co. v. Hale*, 114 F. App'x. 198, 203 (6th Cir. 2004). It goes against basic grammar principles to interpret subsection (v) to modify (iv) and nothing else. Instead, subsection (v) modifies the "insurance coverage" the "Vendor shall maintain." [DE 60-1 at 851 §3(A)]. Thus, the plain and unambiguous meaning of Section 3(A) of the VSA requires ESG to purchase general commercial liability insurance on behalf of Live Nation on a primary basis.

  **2. Secura's obligation is not *Pro Rata*.**

Secura also argues that because the Secura policy is not primary, if the Court found that "S[ecura] owes a defense to Live Nation in the Underlying Action, it should be provided on a prorated basis with the Starr policy." [DE 52 at 365]. That said, at oral argument, Secura stated that "[i]f the court holds as a matter of law that this contract obligated ESG to provide additional insured status for Live Nation on a primary noncontributory basis then under the secured contract

provision in the CGL form of the Secura policy Secura stands behind that contractual obligation." [Tr. at 1884:1–5]. In other words, because the Court found that ESG needed to purchase general liability insurance on behalf of Live Nation on a primary basis, Secura's obligation is not satisfied on a *pro rata* basis.

C. **The VSA is not limited to instances of Vicarious Liability.**

The final issue is the extent to which the VSA obligates ESG to defend and indemnify Live Nation; and therefore, the extent of Secura's responsibility to Live Nation.

Section 4(A) of VSA requires ESG:

To the fullest extent permitted by law, Vendor expressly agrees to indemnify, defend and hold harmless LN Parties from and against any and all claims or loss arising out of any violation of any law, rule, regulation or order, and from any and all claims or liabilities, including reasonable attorney's fees, for loss, damage or injury to persons or property of whatever kind or nature arising from the acts or omissions of Vendor, its parents, partners, affiliates, subsidiaries, successors or assigns and each of their respective agents, employees, representatives and contractors. [DE 60-1 at 852, §4(A)].

Section 3(B) limits the necessary coverage required to "coverage naming the Additional Insureds [ ] be on a contractual liability basis . . . only to the extent of Vendor's liability as described in this Agreement." [*Id.* at 852, §3(B)].

Secura argues that Section 4(A), combined with Section 3(B), limits ESG's liability to Live Nation to instances of vicarious liability. Secura argues that the phrase "arising from the acts or omissions of Vendor" in Section 4(A) does not contemplate indemnity for Live Nation's own negligence, so the provision is limited to instance of vicarious liability. [DE 52-1 at 355–57]. Secura further argues that if the VSA does require ESG to indemnify Live Nation for its own negligence, then that provision would operate as an exculpatory contract. [*Id.* at 353–55]. Secura asserts that the agreement is not enforceable because Section 4(A) does not meet the specificity requirements for an exculpatory contract. [*Id.*].

9

Kentucky has not interpreted the "arise from" phrase to be so limited.[4] Precedent supports a more expansive reading of this phrase based on the precedent interpreting the similar "arising out of" phrase. "[Kentucky] courts that have interpreted this phrase have read it expansively" and have not limited the phrase "arising out of" to vicarious liability. *Asher v. Unarco Material Handling, Inc.*, No. 06–548–ART, 2011 WL 42999, at *5–8 (E.D. Ky. Jan. 6, 2011) ("None of the Kentucky cases cited by the parties limit the phrase 'arising out of' to claims of vicarious liability. Thus, the fact that this Court previously held that the plaintiffs did not adequately plead vicarious liability claims does not preclude a finding that Unarco's liability arose out of Atlas's work."). Instead, under Kentucky law, a policy that is limited to vicarious liability "must be clearly stated in order to apprise the insured of such limitations." *Id*. at *8 (quoting *Anderson v. Kentucky Growers Ins. Co*., 105 S.W.3d 462 (Ky. Ct. App. 2003)). Here, the language of the VSA does not clearly state in Section 4(A) that is limited to "vicarious liability." There is thus no such limitation stated in Section 4(A).

That said, "arising out of," or here, "arising from" signals a "tighter connection than mere 'but for' causation." *Id*. at *8. While not limited to vicarious liability, the phrase implies something closer to a "causal connection." *Id*. at *6. Here, the *Hays* Complaint, at a minimum, alleges a causal connection between ESG's "acts or omissions" and its causes of action. Thus, the allegations "arise from" ESG's actions. The VSA defines ESG's "scope of work" as "crowd management services," which include:

---

[4] *Estate of Mink ex rel. Estes v. GCM* and *Landers v. Sideways, LLC*, cited by Secura, do not interpret the phrase "arising from." [DE 52-1 at 356 (citing *Estate of Mink ex rel. Estes v. GCM, LLC*, No. 12-51-DLB-CJS, 2013 WL 6201907 (E.D. Ky. Nov. 27, 2013); *Landers v. Sideways, LLC*, No. 4:00 CV35M, 2003 WL 25736056 (W.D. Ky. Oct. 1, 2003))]. Thus, those cases are unlike this case. *Quick Delivery of Kentucky, Inc. v. Payless Shoe Source, Inc.* is equally inapplicable because in that case not only does the agreement specifically exclude Payless's own negligence from the indemnification but "in the case before [the court], Payless is not claiming indemnification for its own negligence." *Id.*, No. 2003-CA-001230-MR, 2005 WL 3441360 at *3 (Ky. Ct. App. Dec. 16, 2005).

> (i) crowd control, peer security, and any other such functions hereunder as LN and Vendor may mutually agreed upon in writing, (ii) access control to the stage and backstage areas prior to, during and after the Events, as required by LN and pursuant to LN's instructions, (iii) Venue ingress and egress control and (iv) direction and control of the audience to deter any crowd disturbances.

[DE 60-1, Ex. A].

The allegations in the *Hays* Compliant stem for the readmittance of a customer who ESG previously ejected and then the security measures later taken to contain the situation. [*See* DE 58-3 at ¶¶ 7–9, 19–21 28–30]. All the allegations against Live Nation, "aris[e] from" ESG's "acts or omissions" in the performance of its security services, and therefore fall within the scope of the indemnification clause in the VSA.

Secura's second argument, that the indemnity provision in the VSA is an invalid exculpatory contract, equates the indemnity provision to a waiver of liability and argues that the distinction between exculpatory contracts and waivers of liability is "irrelevant." [DE 52-1 at 353–55]. Secura cites *Speedway Superamerica, LLC v. Erwin*, 250 S.W.3d 339 (Ky. App. 2008), in support of this position and argues that the Court should apply the *Hargis* factors to the VSA. However, Secura misstates the holding of *Speedway Superamerica*. [*Id.*].

*Speedway* involved the enforceability of an indemnity clause in an employment agreement between Speedway and an independent contractor. *Id.* at 341. The parties in S*peedway* disagreed about whether the standard from *Hargis v. Baize,* 168 S.W.3d 36 (Ky. 2005), or another case,

*Fosson v. Ashland Oil & Refining Co.*, 309 S.W.2d 176 (Ky.1957),[5] applied to the court's interpretation of the indemnity agreement. The court in *Speedway* found that whether *Hargis* applied was irrelevant because the central question turned on the parties disparate bargaining power.[6] *Id.* at 342–44. Thus, the court's analysis focused on whether the indemnity clause was void as to public policy because the independent contractor had minimal education and the contract was significantly one-sided. *Id.*

Secura has not put forward any facts that suggest ESG and Live Nation are not sophisticated parties or that the VSA was not negotiated at arm's length. "When, as in this case, the exculpatory clause is 'part of an arm's-length [ ] transaction between sophisticated parties with equal bargaining power[,]' [ ] the clause will be enforced 'unless such enforcement violates public policy.'" *CLK Multifamily Mgmt., LLC v. Greenscapes Lawn & Landscaping, Inc.*, 563 S.W.3d 706, 711–12 (Ky. App. 2018), review denied (Dec. 5, 2018) (quoting *Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 650 (Ky. 2007)). Secura provides no basis for the Court to find that the indemnity clause is an invalid exculpatory contract that violates public policy.

---

[5] The court in *Speedway* found *Hargis* and *Fosson* to be generally consistent with each other. The court found the *Fosson* standard, which states that in "cases where it is *not* improbable that a party would undertake such an indemnification of another party" an indemnification clause would be enforceable, (*Fosson*, 309 S.W.2d at 178), followed the principle set out in *Hargis* and later expounded in *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 653 (Ky. 2007), which states "the subject exculpatory clause 'must be enforced as part of an arm's-length transaction between sophisticated parties with equal bargaining power.'" *Speedway*, 250 S.W.3d at 342 (citing *Cumberland Valley Contractors*, 238 S.W.3d at 650).

[6] The court in *Speedway* did not even mention the *Hargis* factors, which Secura urges the Court to analyze here.

Even under the *Hargis* factors,[7] the indemnification provision passes muster. Courts have not required provisions indemnifying the indemnitee's own negligence to state explicitly "'including the [indemnitee's] own negligence.'" *Fosson*, 309 S.W.2d at 178. Rather, Courts have found indemnification provisions almost identical to Section 4(A) to be explicit enough and permitted indemnification for the indemnitee's own negligence. *See id.*[8]; *see also Century Sur. Co. v. Cont'l Cas. Co.*, No. 2004-CA-000423-MR, 2005 WL 1490463, at *3 (Ky. Ct. App. June 24, 2005)[9]. Thus, the indemnification of Live Nation's own negligence was stated by the parties in Section 4(A) of the VSA, and Live Nation's Cross Motion for Summary Judgment on Coverage Claims Against Secura Insurance [DE 59] is **GRANTED** and Secura's Motion for Summary Judgment Against Live Nation [DE 52] is **DENIED**.

---

[7] The *Hargis* factors require the Court to consider whether the indemnification clause: "(1) [ ]explicitly expresses an intention to exonerate by using the word 'negligence;' or (2) [ ] clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision." *CLK Multifamily Mgmt., LLC*, 563 S.W.3d at 711 (citing *Hargis*, 168 S.W.3d at 47).

[8] The relevant provision in *Fosson v. Ashland Oil & Ref. Co.* states: "The Contractor shall indemnify the Owner against all claims, demands, liens, taxes, loss or damages of any character suffered by the Owner and shall save the Owner harmless from all liability growing out of or incurred in the prosecution of said work or *arising from any operations, acts, or omissions of Contractor*." *Id.* at 177–78 (finding that the "indemnity provision was intended to and did conver (*sic*) acts of negligence by the indemnitee") (emphasis added).

[9] The relevant provision in *Century Sur. Co. v. Cont'l Cas. Co.* states: "Licensee shall indemnify and hold Licensor, its managers, employees, agents, contractors, parents, subsidiaries and affiliates harmless from and against any and all claims, actions, liens, demands, expenses and judgments for loss, damage or injury to property or persons resulting or occurring by reason of the Licensee's construction activities under this License. . ." *Id.* at *1 (finding the provision to be "not unlike the clause involved in *Fosson*" and that based on evidence, including the broad language of the agreement and the fact that the agreement required the indemnitor to obtain general liability insurance on behalf of the indemnitee "it [was] apparent that . . . the indemnitor, would be obligated to indemnify [ ] the indemnitee, even for liability resulting from the acts or omissions of the [indemnitee]").

### D. Live Nation's Coverage Claims against ESG

Secura concedes that if the VSA requires ESG to indemnify Live Nation, it will provide coverage. Because Secura will provide Live Nation with the coverage required by the VSA [Tr. at 1883:4–84:15; 1923:8–16], Live Nation's breach of contract claim against ESG is moot. Live Nation argues a breach of contract by ESG only if ESG did not secure insurance coverage as required by the VSA. In other words, because Secura is providing coverage, ESG is not in breach of the VSA. As a result, Live Nation's Motion for Summary Judgment for Breach of Contract against ESG [DE 61] is **DENIED**. For the same reason, ESG's Motion for Summary Judgment [DE 53] is also **GRANTED**.

### CONCLUSION

For the reasons stated above, and being otherwise sufficiently advised, the **COURT ORDERS AS FOLLOWS:**

(1) Defendant, Secura Insurance's Motion for Summary Judgment [DE 52] is **DENIED.**

(2) Defendant, ESG Security's Motion for Summary Judgment [DE 53] is **GRANTED**.

(3) Plaintiff, Live Nation WorldWide, Inc.'s Cross Motion for Summary Judgment on Coverage Claims Against Secura Insurance [DE 59] is **GRANTED**.

(4) Plaintiff, Live Nation WorldWide, Inc.'s Cross Motion for Summary Judgement on Breach of Contract Claim [DE 61] is **DENIED**.

(5) Within **30 days** of this Order, the Parties shall submit an agreed scheduling order that includes a proposed mediation date and a proposed trial date.

**IT IS SO ORDERED.**